**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TSIGEWEINI YOHANES TESFABRUK | |
| *Plaintiff*, | No. 1:22-cv-1460 |
| v. | |
| U.S. DEPARTMENT OF HOMELAND SECURITY (DHS); U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); U.S. DEPARTMENT OF STATE (DOS); UR MENDOZA JADDOU, Director of USCIS; ANTONY BLINKEN, Secretary of State | |
| *Defendants*. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Tsigeweini Yohanes Tesfabruk brings this case under the Mandamus Act and the Administrative Procedure Act to compel the government Defendants to adjudicate the immigration petition she filed in August 2019 on behalf of her son. *See* 28 U.S.C. § 1361; 5 U.S.C. § 706(1).

## I.    INTRODUCTION

1.    Ms. Tesfabruk has been separated from her son, Eyob Birhane Haile, for eight years. Ms. Tesfabruk is an Eritrean national of Tigrinya ethnicity and is married to an Ethopian man. In 2012, following persistent harassment and threats against Ms. Tesfabruk on account of her marriage to an Ethiopian national, Ms. Tesfabruk fled Eritrea with Eyob and her daughter and resettled in a refugee camp in Ethiopia. Two years later,

when Eyob was a young teenager, he left the refugee camp with a group of young men and began a perilous journey to Europe. Ms. Tesfabruk and her son have been separated ever since. Ms. Tesfabruk and her daughter entered the United States with refugee status in October 2018.

2.      In August 2019, Ms. Tesfabruk filed a Form I-730, Refugee/Asylee Relative Petition for her son so that he could join her in the United States. In September 2019, USCIS transferred the petition to a branch office where the petition has stalled for over two and a half years. Neither Ms. Tesfabruk nor Counsel have received any updates about the status of the petition since September 2019, and Counsel's inquiries to the address where the petition was transferred have been returned as undeliverable.

3.      Ms. Tesfabruk asks the Court to issue a Writ of Mandamus and/or an Order to Compel under the Administrative Procedure Act (APA), ordering Defendants to adjudicate the I-730 petition she filed over two and a half years ago. Defendants have a non-discretionary duty to adjudicate the long-pending petition and Ms. Tesfabruk and her family have suffered greatly due to the delay in adjudication.

## II.      JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 702 (the Administrative Procedure Act), and 28 U.S.C. § 1361 (mandamus statute).

5.      Venue properly lies within the Northern District of Illinois because a substantial part of the events or omissions giving rise to this action occurred in the District. 28 U.S.C. § 1391(b). Plaintiff currently resides in Chicago, IL.

### III.    PARTIES

6.    Plaintiff Tsigeweini Yohanes Tesfabruk is an Eritrean national who entered the United States as a refugee in October 24, 2018 and later adjusted her status to lawful permanent resident. Ms. Tesfabruk filed an I-730 follow-to-join petition for her son, Eyob Birhane Haile, on August 6, 2019.

7.    Defendant Department of Homeland Security (DHS) is a Department of the Executive Branch charged with adjudicating the first phase of I-730 petitions.

8.    Defendant United States Citizenship and Immigration Services (USCIS) is a component within DHS charged with, *inter alia*, adjudicating petitions for asylum filed by noncitizens who are not in removal proceedings before the Executive Office for Immigration Review. USCIS has the obligation to adjudicate Plaintiff's I-730 petition.

9.    Defendant U.S. Department of State (DOS) is responsible for granting overseas visas and conducting processing in accordance with visa processing.

10.    Defendant Ur Mendoza Jaddou is the Director of USCIS, the agency charged with adjudicating Plaintiff's I-730 petition and forwarding approved petitions to the DOS.

11.    Defendant Antony Blinken is Secretary of State. DOS is the cabinet charged with granting overseas visas.

### IV.    STATEMENT OF FACTS

#### A.  Ms. Tesfabruk Fled Persecution in Eritrea and Was Separated from Her Son.

12.    Ms. Tesfabruk is an Eritrean national of Tigrinya ethnicity. Her husband, Birhane Haile Gebreabezgi, is an Ethiopian national. Together they have six children, five boys and one daughter.

13.     During the Eritrean-Ethiopian war, around 2000, the Eritrean government deported Mr. Gebreabezgi to Ethiopia. Ms. Tesfabruk has never been reunited with her husband.

14.     After Mr. Gebreabezgi was deported, Ms. Tesfabruk remained in Eritrea working as farmer and raising her six children by herself.

15.     Although Ms. Tesfabruk and her children are Eritrean nationals, members of her community repeatedly harassed and threatened Ms. Tesfabruk and her children on account of Mr. Gebreabezgi's Ethiopian nationality. On several occasions, community members threatened to burn down Ms. Tesfabruk's house if she and her children did not leave Eritrea.

16.     Fearing physical retaliation and punishment from the Eritrean government and the local community, four of Ms. Tesfabruk's sons fled Eritrea between 2006 and 2011.

17.     In January 2012, Ms. Tesfabruk and the two children who remained with her in Eritrea, her daughter Helen Birhane Haile and her son Eyob Birhane Haile, fled to Sudan. Shortly thereafter, they crossed into Ethiopia on foot.

18.     The Ethiopian government apprehended Ms. Tesfabruk and her children, registered them as refugees, and placed them in a refugee camp in Ethiopia.

19.     In January 2014, when Eyob was 14 years old, he left the refugee camp with a group of young men and began a perilous journey to Europe.

20.     Ms. Tesfabruk searched for her son, but all she learned was that someone had seen Eyob in Sudan.

21.     Eyob traveled through Sudan, and then Libya. In Libya, armed militants kidnapped Eyob and other migrants. The kidnappers physically abused Eyob, and

4

murdered a group of migrants who tried to escape. To this day, Eyob suffers from night sweats, nightmares, and anxiety due to the trauma he endured in Libya.

22.    The kidnappers released Eyob, and he crossed the Mediterranean Sea and entered Italy, Austria, and then Germany, where he was placed in a shelter for unaccompanied migrant children.

23.    In October 2014, Eyob was resettled in the Netherlands in a shelter for unaccompanied migrant children.

24.    Eyob currently resides in Apeldoorn, Netherlands.

25.    In 2018, Ms. Tesfabruk and her daughter Helen left the refugee camp. Ms. Tesfabruk and Helen entered the United States with refugee status on October 24, 2018.

**B. The I-730 Petition Filed in August 2019 is Delayed without Clear Explanation.**

26.    In 2019, Ms. Tesfabruk began working with the National Immigrant Justice Center ("Counsel") to adjust her status to lawful permanent resident and to reunify with Eyob.

27.    Counsel solicited a pro bono law firm to file Ms. Tesfabruk's I-730 follow-to-join petition for Eyob.[1] In August 2019, Ms. Tesfabruk filed her I-730 petition through pro bono counsel. Ex. A, I730 Petition.

28.    On August 6, 2019, USCIS sent Ms. Tesfabruk a receipt indicating that the petition had been properly filed. Ex. B, I-730 Receipt Notice.

29.    After a preliminary review of the I-730 petition, USCIS did not approve nor deny Ms. Tesfabruk's petition. Rather, USCIS transferred the petition to the USCIS

---

[1] Form I-730 petitions are for refugees to "request follow-to-join benefits for [their] spouse and/or unmarried children under 21 years of age." (https://www.uscis.gov/i-730). Essentially, they are petitions that allow refugees to apply for visas for immediate family members.

International Adjudications Support Branch in Anaheim, CA (hereinafter IASB) for further processing on September 20, 2019. Ex. C, I-730 Transfer Notice; *see also* Ex. I, USCIS Case Status Online.

30.     On January 22, 2021, Counsel emailed a status inquiry and a G-28 Notice of Entry of Appearance as Attorney or Accredited Representative[2] to the National Visa Center (NVC). Ex. D, NVC Inquiry Form. On January 27, 2021, the NVC replied that it did not have the petition in its records. Ex. E, NVC Response.

31.     On March 3, 2021, Counsel mailed via FedEx an inquiry and a G-28 to the IASB address listed in the September 2019 transfer notice. Ex. F, FedEx Inquiry. FedEx returned Counsel's inquiry, stating that the IASB mailing address did not exist.

32.     In July 2021, Counsel confirmed with USCIS via telephone that the IASB mailing address was correct.

33.     Counsel subsequently mailed another inquiry and G-28 to the IASB via the U.S. Postal Service (USPS). Ex. G, USPS Inquiry. Counsel's inquiry was returned-to-sender as undeliverable. Ex. H, USPS Inquiry Returned.

34.     As of the date of this filing, the USCIS case status website merely reiterates the information from the September 2019 transfer notice—that the petition was transferred to the IASB on September 20, 2019 "as part of standard processing," and that the USCIS IASB office would provide further instructions "upon receipt of your case." Ex. I, USCIS Case Status Online (accessed March 21, 2022).

---

[2] Form G-28 is the form used to establish the eligibility of an attorney or accredited representative to act on behalf of an applicant, petitioner, or respondent in immigration matters before the DHS, including matters before USCIS. (https://www.uscis.gov/g-28).

35.　Ms. Tesfabruk has not received any updates or instructions regarding her son's petition from USCIS, the NVC, the DOS, or any other governmental agency, since the petition was transferred to the IASB on September 20, 2019.

**C. Ms. Tesfabruk's Separation from Her Son Has Caused Hardship to the Family.**

36.　Ms. Tesfabruk and her son have been separated for eight years, since Eyob was 14 years old.

37.　USCIS received Ms. Tesfabruk's follow-to-join petition over two and a half years ago. Ex. B.

38.　Ms. Tesfabruk and her family have undergone severe hardship due to the delay in processing the visa. These hardships include, but are not limited to, physical and mental health issues and problems in family life.

39.　Ms. Tesfabruk's physical and mental health have suffered due to the delay. She has been separated from Eyob since he made the treacherous journey to Europe as a young adolescent. Ms. Tesfabruk has missed critical years of her son's life, and she is overcome with grief when she thinks about Eyob's kidnapping and all that he has endured without her. Ms. Tesfabruk has lived in a constant state of anxiety since being separated from her son and the processing delay has compounded her anxiety. Ms. Tesfabruk suffers from hypertension, which is exacerbated by her anxiety, and she experiences headaches due to the stress.

40.　Eyob also experiences significant mental anguish as a result of the delay. He is haunted by the trauma he experienced in Libya as a teenager separated from his family. He suffers from depressive episodes and feelings of loneliness. Additionally, due to the multi-year processing delay, Eyob feels stuck in limbo and unable to plan for the

future or take steps towards his goals. He feels that he does not have agency over his own life. Eyob is anxious about the delay and obsessively checks the mail for updates about the petition.

41.     The processing delay has also caused hardships in their family life. Ms. Tesfabruk and Eyob have been apart for eight years. The delay, which has extended their separation by two and a half years, strains their mother-child relationship. Although they talk frequently, each conversation invariably returns to Eyob asking his mother if there is any news about the stalled petition, and whether they are any closer to being together again.

## V.     LEGAL FRAMEWORK

### A.  The Mandamus Act

42.     Under 28 U.S.C. § 1361, the federal mandamus statute, this Court has "original jurisdiction in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

43.     "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002) (internal citations omitted).

44.     A spouse or child of a refugee is entitled to enter the United States as a refugee. 8 U.S.C. § 1157(c)(2)(A).

45.     USCIS has a statutory duty to adjudicate I-730 petitions within 180 days of filing. 8 U.S.C. §§ 1158(d)(5)(A)(iii), 1571(b).

46.     DOS is required by law to act on a visa application. Under 22 C.F.R. § 42.81, "[w]hen a visa application has been properly completed and executed before a

consular officer in accordance with the provision of INA and the implementing regulations, the consular officer must issue the visa [or] refuse the visa."

47.     To date, USCIS has not adjudicated Ms. Tesfabruk's I-730 follow-to-join petition for her son Eyob, and DOS has neither issued nor refused the visa. *See* Ex. I.

**B.  The Administrative Procedure Act**

48.     Under the Administrative Procedure Act (APA), courts are authorized to compel agency action which has been unreasonably delayed. 5 U.S.C. § 706(1). An action to compel agency action under the APA is nearly identical to that of the mandamus statute when a plaintiff asks the court to compel an agency to perform a non-discretionary duty. *See Miao He v. Chertoff*, 528 F. Supp. 2d 879, 884 (N.D. Ill. 2008).

49.     An agency must "conclude a matter presented to it . . . within a *reasonable* time." 5 U.S.C. § 555(b) (emphasis added).

50.     Assessing reasonableness frequently involves a balancing test. *See Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

51.     In determining the reasonableness of delayed agency action, this Court has applied a four-factor test:

> (1) Whether the time the agency takes to make a decision is governed by a rule of reason, the context for which may be supplied by an enabling statute that provides a timetable or other indication of the speed with which Congress expects the agency to proceed;
>
> (2) whether human health and welfare are at stake (delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake);
>
> (3) the effect of expediting delayed action on agency activities of a higher or competing priority; and

(4) the nature and extent of the interests prejudiced by the delay.

*Mohamed v. Dorochoff*, No. 11 C 1610, 2011 WL 4496228, at *5 (N.D. Ill. Sept. 22, 2011).

### C. Form I-730, Refugee/Aslyee Relative Petition

52.     A spouse or child of a refugee is entitled to enter the United States as a refugee. *See* 8 U.S.C. § 1157(c)(2)(A). Procedurally, the principal refugee in the United States files an I-730 petition on behalf of her spouse and children. *See* USCIS, I-730, Refugee/Asylee Relative Petition, https://www.uscis.gov/i-730. This is known as a follow-to-join petition. *Id.*

53.     The processing of such an application takes several steps and three agencies—USCIS, the NVC, and the DOS. *See* U.S. Dep't of State Bureau of Consular Affairs, Follow-to-Join Refugees and Asylees, https://travel.state.gov/content/travel/en/us-visas/immigrate/follow-to-join-refugees-and-asylees.html [hereinafter DOS Follow-to-Join Guidance].

54.     ***First*,** the petitioner must file a Form I-730, Refugee/Asylee Relative "follow-to-join" petition on behalf of a spouse or unmarried children (known as the "beneficiary") with USCIS. *Id.*

*55.*     ***Second*,** if USCIS approves the petition, the agency sends an approval notice to the petitioner. Then USCIS forwards the petition to the NVC to continue processing and sends a transfer notice to the petitioner communicating the status of the petition. *Id.*

56.     ***Third*,** the NVC collects additional information and forwards the approved visa to the embassy or consulate abroad. *Id.*

57.     **Fourth,** a DOS consular officer or USCIS officer at the U.S. embassy or consulate interviews the beneficiary abroad. *Id.*

58.     **Finally,** DOS completes final processing. *Id.* DOS issues travel documents; the beneficiaries travel to the United States. *Id.*

59.     Ms. Tesfabruk, the petitioner, filed the I-730 follow-to-join petition with USCIS on behalf of her son Eyob, the beneficiary, on August 6, 2019. Ex. A; *see also* Ex. B.

60.     On September 20, 2019, USCIS transferred the petition to the USCIS International Adjudications Support Branch (IASB) for further processing. Ex. C.

61.     There have been no further updates since September 20, 2019.

62.     Although USCIS has had Ms. Tesfabruk's I-730 petition for two and a half years, the petition has not even progressed to the second step in the process. *See* Ex. I (case status as of March 21, 2022 indicating that last action was the transfer to the IASB in September 2019); *see also* Ex. E (response from the NVC stating that they have no record of the petition).

63.     Counsel's various attempts to inquire about the status of the petition have failed. *See* Ex. F–H (inquiries submitted to the address USCIS provided for the IASB returned undeliverable); *see generally* Ex. D–E (inquiries to the NVC).

<u>**CLAIMS FOR RELIEF**</u>

**COUNT ONE**
**Mandamus Act**

64.     The allegations above are repeated and realleged here.

65. By statute, district courts may compel an officer or employee of the United States to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. *See Iddir v. INS*, 301 F.3d 492, 499 (7th Cir. 2002); *Kamal v. Gonzalez*, 547 F. Supp. 2d 869, 877 (N.D. Ill. 2008).

66. Ms. Tesfabruk has a right to apply for her son Eyob to join her in the United States as a follow-to-join refugee. *See* 8 U.S.C. § 1157(c)(2)(A).

67. Defendants owe Ms. Tesfabruk a duty to adjudicate the I-730 petition and Congress has provided that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." 8 U.S.C. § 1571; *see also* 8 U.S.C. § 1158(d)(5)(A)(iii). Ms. Tesfabruk's petition has been pending for more than two and a half years; over five times Congress's 180-day directive.

68. No adequate remedy exists at law, for the reasons outlined above. On behalf of Ms. Tesfabruk, Counsel has repeatedly inquired with USCIS and the NVC to determine the status of the I-730 petition. Ms Tesfabruk has not received any updates regarding the status of the petition since the petition was transferred to the IASB in September 2019.

69. Ms. Tesfabruk and her son have suffered and will continue to suffer irreparable harm from the adjudication delay in their case.

70. Having diligently followed the procedures set forth by USCIS and having exhausted any administrative remedies that may exist, Ms. Tesfabruk seeks a Writ of Mandamus ordering Defendants to adjudicate the I-730 petition she filed on behalf of her son two and a half years ago.

**COUNT TWO**
**Administrative Procedure Act**

71. The allegations above are repeated and realleged here.

72.     Defendants have unreasonably delayed adjudication of Ms. Tesfabruk's I-730 petition filed on behalf of her son, despite a clear statutory deadline requiring them to adjudicate their petition within 180 days and despite the APA's mandate that an agency must "conclude a matter presented to it . . . within a reasonable time." 5 U.S.C. § 555(b).

73.     Ms. Tesfabruk's I-730 petition has been pending for two and a half years.

74.     As a result of Defendants' delay adjudicating the I-730 follow-to-join petition and processing the visa, Ms. Tesfabruk and her son have suffered hardships and have been unable to move forward with critical aspects of their lives. They have lost years of companionship with one another as mother and son, and their prolonged separation has taken a toll on their mental and physical health. The anxiety from the separation exacerbates Ms. Tesfabruk's hypertension and headaches. And Eyob feels that he is in limbo and that he does not have agency over his own life. He suffers from depressive episodes and lives in a constant state of anxiety due to the processing delay.

75.     No other adequate remedy exists at law.

## PRAYER FOR RELIEF

Accordingly, Plaintiff respectfully asks the Court to:

1.     Find that Defendants have unlawfully withheld adjudication of Ms. Tesfabruk's I-730 petition;

2.     Find that Defendants have unreasonably delayed adjudication of Ms. Tesfabruk's I-730 petition;

3.     Issue a Writ of Mandamus, ordering Defendants to adjudicate Ms. Tesfabruk's I-730 petition within 15 days of the Court's order;

4.    Pursuant to 5 U.S.C. § 706(1), compel Defendants to adjudicate Ms. Tesfabruk's I-730 petition within 15 days of the Court's order;

5.    Maintain jurisdiction over this matter through the pendency of the I-730 adjudicative process as described in paragraphs 54 through 58;

6.    If Ms. Tesfabruck's I-730 petition is approved, order Defendants to expeditiously complete the remaining steps in the adjudicative process (see paragraphs 54 through 58) as expeditiously as possible but no later than 60 days from approval of the I-730 petition;

7.    Order Defendants to pay legal fees and costs in this action; and

8.    Grant such other relief as the Court deems necessary and proper.


Date: March 21, 2022                              Respectfully submitted,


                                                  /s Karla Olivas
                                                  Karla Olivas
                                                  National Immigrant Justice Center
                                                  224 South Michigan Ave., Suite 600
                                                  Chicago, Illinois 60604
                                                  T: (312) 660-1335
                                                  F: (312) 660-1505
                                                  kolivas@heartlandalliance.org